**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KEVIN DANAHY,<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM BLUE CROSS AND BLUE SHIELD, LEADING EDGE ADMINISTRATORS and STELLAR HEALTH MANAGEMENT LLC EMPLOYEE MEDICAL BENEFIT PLAN,<br><br>Defendants. | CIVIL ACTION NO. |

## COMPLAINT

## INTRODUCTION

1. Plaintiff Kevin Danahy ("Plaintiff" or "Mr. Danahy") brings this action against Anthem Blue Cross and Blue Shield ("Anthem"), Leading Edge Administrators ("Leading Edge", and together with Anthem, the "Administrators"), and the Stellar Health Management LLC Employee Medical Benefit Plan (the "Plan", and together with the Administrators, "Defendants"), for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"). Mr. Danahy is a beneficiary under the Plan, an employee welfare benefit plan governed by ERISA. At all relevant times, the Administrators administered claims for health benefits under the Plan and were responsible for the benefit determinations challenged in this action.

2. This action arises from Defendants' refusal to comply with ERISA's disclosure requirements after denying coverage for Mr. Danahy's medically necessary treatment. Despite repeatedly requesting the documents relevant to his claim, repeatedly providing valid authorizations, and

repeatedly advising Defendants that he sought only the documents required by ERISA, not an administrative appeal, Defendants repeatedly mischaracterized Mr. Danahy's requests as appeals, failed to disclose the requested Claim File, failed to provide Mr. Danahy with the opportunity for a meaningful administrative appeal, and ultimately forced Mr. Danahy to commence this action simply to obtain documents to which he is entitled under federal law.

3. Mr. Danahy brings this action to compel Defendants to produce the complete administrative record and other documents required by ERISA; to restore his ability to pursue the administrative review guaranteed by federal law; to enforce his rights under the Plan and ERISA; to obtain equitable relief for Defendants' violations of ERISA; to recover statutory penalties for Defendants' failure to disclose required documents; to recover attorneys' fees and costs authorized by ERISA; and to obtain such other relief as this Court deems just and proper.

**JURISDICTION**

4. This court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

**PARTIES**

5. Plaintiff Mr. Danahy resides in Massachusetts. At the time of his treatment, which is the subject of this Complaint, Mr. Danahy was a beneficiary under the Plan.

6. At the time of the treatment that is the subject of this Complaint, Mr. Danahy's wife, a resident of Massachusetts, was a participant in the Plan, which was self-insured by her employer, Stellar Health Management LLC ("Stellar Health").

7. The defendant, Anthem, is a for-profit corporation with its principal place of business in Woodland Hills, California. Anthem conducts business in Massachusetts and, together with

Leading Edge, administered claims for benefits under the Plan during the period relevant to this action.

8. The defendant, Leading Edge, is a for-profit corporation with its principal place of business in New York, New York. Leading Edge conducts business in Massachusetts and, together with Anthem, administered claims for benefits under the Plan during the period relevant to this action.

9. The Plan under which Plaintiff is suing is an employee welfare benefit plan governed by ERISA, 29 U.S.C. § 1002(1).

10. At all times relevant to this action, the Administrators exercised discretionary authority over benefit determinations and claims administration under the Plan and therefore acted as ERISA fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A).

## STATEMENT OF FACTS

**Insurance Entitlement and Plan Administration**

11. At all relevant times, Mr. Danahy was a beneficiary under the Plan through his wife's employment with Stellar Health.

12. In a position statement dated September 3, 2026, submitted to the Massachusetts Commission Against Discrimination by Stellar's counsel and affirmed under the pains and penalties of perjury by Stellar's Vice President of Operations (the "Position Statement"), Stellar states that Mr. Danahy's wife worked at Premier Healthcare at Harrington House in Walpole, Massachusetts, a facility owned by 160 Main Street Operator, LLC ("160 Main Street"), which shares common ownership with Stellar; that "160 Main Street offered its employees health care coverage through Stellar's plan"; that her insurance benefits began on her March 10, 2025 start date; and that Mr. Danahy "was covered under the plan."

13. The Plan is a self-funded employee welfare benefit plan governed by ERISA.

14. The Administrators administered claims for benefits under the Plan and were responsible for determining eligibility for coverage and interpreting the terms of the Plan.

15. Stellar further states in the Position Statement that the Plan "was provided by Leading Edge, a third party administrator that partnered with Anthem Blue Cross Blue Shield," and that "[n]either Stellar nor 160 Main Street had any ability to determine or affect coverage for Mr. Danahy's treatments under Stellar's Health Plan with Leading Edge and Anthem."

16. The Plan provides coverage for medically necessary healthcare services, subject to its terms and conditions.

17. In administering claims under the Plan, the Administrators were responsible for complying with ERISA's claims procedure regulations and disclosure requirements.

18. The Administrators denied coverage for Mr. Danahy's medically necessary Remicade infusions despite previously approving those same treatments as medically necessary.

19. Under the terms of the Plan, beneficiaries are entitled to the following:

> The Plan Administrator shall provide a Claimant with a notice…containing the following information…[a] statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's claim for benefits.

**<u>Mr. Danahy's Claim for Benefits</u>**

20. In 2020, Mr. Danahy was diagnosed with cardiac sarcoidosis, a life-threatening heart condition.

21. Thereafter, Mr. Danahy was successfully treated with infusions of Remicade every two months to control inflammation in his heart.

22. This bi-monthly Remicade infusion, which Mr. Danahy receives at Beth Israel Deaconess Medical Center in Boston, is the subject of this lawsuit.

23. Initially, Mr. Danahy's Remicade infusions were covered by his wife's then employer's health plan.

24. In March 2025, Mr. Danahy's wife started a new job at Stellar Health, at which point Mr. Danahy became a beneficiary covered under the Plan.

25. In an April 1, 2025 letter, Anthem pre-approved Mr. Danahy's Remicade infusions as "medically necessary", for the period from March 25, 2025 through March 25, 2026.

26. The April 1, 2025 letter states that "[t]he medication you or your doctor asked us to review is approved," identifies the benefit as "Medical," authorizes seven outpatient visits, and names Beth Israel Deaconess Medical Center as the servicing provider. The letter further states that the claim "should be covered as long as" Mr. Danahy remained eligible and enrolled, did not reach a benefit limit that applied to the medication, and the information Anthem received was accurate. Each of those conditions was met. Stellar has acknowledged the "somewhat confusing language of the pre-authorization letter."

27. Stellar also states that its Employee Benefit Summary listed infliximab (Remicade) as requiring preauthorization and provided that, if preauthorization was not obtained, the "benefit will be reduced by $1,000 for inpatient stays or 20% for outpatient services." That provision treats Remicade as a covered benefit subject to a preauthorization requirement, not as an excluded drug. Anthem authorized the treatment in advance.

28. Mr. Danahy received a Remicade infusion on April 26, 2025.

29. Thereafter, Mr. Danahy received an Explanation of Benefits ("EOB") from Leading Edge, which indicated Mr. Danahy's responsibility for the April 26, 2025 Remicade infusion was just his remaining deductible of $587.85. The balance of the charges for his April 26, 2025 Remicade treatment were discounted by the provider or paid by the Plan.

30. Mr. Danahy received another Remicade infusion in June 2025.

31. Subsequently, despite Anthem's pre-approval and prior coverage of his Remicade treatments, Mr. Danahy's health provider portal showed a balance due from Mr. Danahy of $11,307.88

32. Mr. Danahy received another EOB, which showed denied claims for the services dated May 14, 2025 and June 23, 2025, totaling $11,714.81.

33. Mr. Danahy received another EOB, which showed denied claims for the services dated June 20, 2025, August 27, 2025 and September 15, 2025, totaling $9,035.82.

34. When Mr. Danahy contacted Leading Edge to inquire into why his claims for Remicade treatment were now being denied, he was told by Leading Edge that the Plan did not include "specialty medication."

35. After multiple meetings with Leading Edge and Stellar Health yielded no resolution, Mr. Danahy cancelled a scheduled August 2025 Remicade infusion.

36. By August 25, 2026, Anthem had reprocessed both of Mr. Danahy's Remicade claims, for the April 26, 2025 infusion (Claim No. 2025123870800) and the June 20, 2025 infusion (Claim No. 2025178MH1168), and had approved them as consistent with its April 1, 2025 prior authorization (Reference No. 133501583). Despite that approval, Anthem had not issued payment to Beth Israel Deaconess Medical Center on either claim, and had not corrected its earlier determination that the treatment lacked prior authorization.

37. As a result of Defendants failure to pay Mr. Danahy's claims, which Anthem had approved, Mr. Danahy continues to be billed, with the outstanding bills sent to collections.

38. Stellar has since represented that these claims were covered and paid. In the Position Statement, Stellar states that "Leading Edge, in combination with Anthem, determined that it would cover the cost of the first two treatments"; that "Anthem, and not Stellar or 160 Main Street, ultimately covered the cost of these two treatments"; and that Mr. Danahy received a revised Explanation of Benefits on September 9, 2025 for the April 26, 2025 infusion and another on January 7, 2026 for the June 20, 2025 infusion, each "indicating that the Remicade administered on that date would be covered." Stellar adds that it "did not determine whether

or not these treatments were covered and did not pay for them."

39. Anthem's determinations on these two claims have changed repeatedly without any written explanation to Mr. Danahy. The April 26, 2025 claim was first reported to Mr. Danahy as leaving him responsible only for his $587.85 deductible, was later reprocessed to assign him $11,714.81, and, according to Stellar, was revised again on September 9, 2025. The June 20, 2025 claim was approved on July 8, 2025 with $5,958.94 assigned to Mr. Danahy, denied on September 23, 2025 with $9,035.82 assigned to him, and, according to Stellar, revised again on January 7, 2026.

40. Stellar's representations do not reflect what has happened to Mr. Danahy's claims. Anthem's online claims records show that, as of August 19, 2025, the April 26, 2025 claim (Claim No. 2025123870800) was marked "approved" while assigning $11,714.81 to Mr. Danahy, including a single $11,126.96 charge on which the Plan paid nothing, and that, as of September 23, 2025, the June 20, 2025 claim (Claim No. 2025178MH1168) was denied, with the full $9,035.82 assigned to Mr. Danahy. As of the date of this Complaint, Anthem has not issued payment to Beth Israel Deaconess Medical Center on either claim, and Mr. Danahy continues to be billed for the charges.

41. To date, Defendants have never issued a written adverse benefit determination that complies with ERISA's claims procedure regulations. Specifically, Defendants have never provided Mr. Danahy with a written explanation of the reasons for the denial, the specific Plan provisions supporting the denial, a description of any additional information necessary to perfect the claim, notice of his appeal rights, or notice of his right to obtain the documents relevant to his claim, as required by ERISA and the Plan.

42. The Position Statement does not identify any written adverse benefit determination. Stellar states only that Hub International ("Hub"), an insurance broker, together with Leading Edge

and Anthem, "made it clear to Mr. Danahy that his Remicade treatments were not covered under Stellar's plan, and he would be responsible for any further treatments."

43. Stellar also states that, by late August 2025, Leading Edge, Anthem, and Hub "had determined that they (not Stellar Health or 160 Main Street) would pay for the previous treatments, and made clear that Mr. Danahy's treatments were not covered going forward." Stellar was therefore aware by late August 2025 that Mr. Danahy's Remicade treatments had been determined not to be covered going forward. Upon information and belief, Stellar did not review, correct, or direct reconsideration of that determination.

44. Rather than following the claims procedures required by ERISA, Defendants effectively prevented Mr. Danahy from entering the administrative review process altogether. Defendants initially approved Mr. Danahy's Remicade treatment as medically necessary and paid for his initial treatment. They later denied coverage for the same treatment without issuing an ERISA-compliant adverse benefit determination explaining the basis for the denial, identifying the Plan provisions supporting the decision, advising Mr. Danahy of his appeal rights, or informing him of his right to obtain the documents relevant to his claim. When Mr. Danahy thereafter attempted to obtain those documents so that he could understand and challenge Defendants' decision, Defendants repeatedly characterized his requests as administrative appeals while continuing to withhold the very information ERISA requires administrators to disclose before a claimant can meaningfully pursue an appeal.

**Request for Information**

45. ERISA and the Plan require Defendants, upon written request, to provide a claimant with reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits (the "Claim File").

46. Consistent with those obligations, the Plan provides that every notice of adverse benefit

determination shall advise claimants that they are entitled, upon request and without charge, to obtain all documents, records, and other information relevant to their claim.

47. Although Defendants never issued Mr. Danahy a written adverse benefit determination complying with ERISA, Mr. Danahy nevertheless repeatedly requested his Claim File in an effort to understand the basis for Defendants' denial of coverage and to preserve his right to pursue administrative review.

48. On September 10, 2025, Mr. Danahy requested a copy of his claim file from Anthem. In his e-mail enclosing a copy of his request, Mr. Danahy wrote: "Please see the attached Claim Files Request. I suffer from a potentially deadly condition. Considering the way benefits have been structured, administrative processes have been running, and the massive interruption on the continuation of my life-saving treatments, which are now overdue, please (sic) this Claim Files Request in its entirety, so I can pursue next steps."

49. On April 2, 2026, Mr. Danahy, through counsel, submitted a written request for his complete Claim File. Counsel enclosed a signed authorization executed by Mr. Danahy's wife, his legal guardian, permitting disclosure of his protected health information and claim documents, and expressly instructed that all future communications be directed to counsel. The letter further stated, in bold type, "This is not an appeal."

50. Rather than producing the requested documents, Anthem responded on April 3, 2026 by advising Mr. Danahy that it had received "a request . . . for an appeal." Anthem's response ignored Mr. Danahy's request for documents, disregarded counsel's instruction that communications be directed to counsel, and incorrectly characterized the request as an appeal despite counsel's express statement to the contrary.

51. On May 4, 2026, Mr. Danahy again requested his complete Claim File, enclosed another valid authorization, and again advised Anthem, in bold and italic type, that the request "is not a

grievance or an appeal."

52. Anthem did not respond to this letter.

53. On May 19, 2026, Mr. Danahy again requested his complete Claim File, again enclosed a valid authorization, and again advised Anthem that the request was not an appeal.

54. On May 27, 2026, Anthem issued two additional letters stating that it had received "a request . . . for an appeal." Both letters again ignored Mr. Danahy's request for documents, disregarded counsel's instructions regarding future communications, and incorrectly characterized the document request as an administrative appeal.

55. On June 2, June 16, June 30, July 14, July 28, August 14, September 14, September 30, October 14 and October 28, 2026, Mr. Danahy continued to request production of his complete Claim File. Each request enclosed a valid authorization permitting disclosure of his claim information.

56. On August 17, 2026, Anthem again responded by advising Mr. Danahy that it had received "a request . . . for an appeal." As with its prior responses, Anthem's August 17, 2026 letter ignored Mr. Danahy's request for documents, disregarded counsel's instruction that communications be directed to counsel, and again incorrectly characterized the request as an administrative appeal.

57. On August 25, 2026, Mr. Danahy's counsel again requested the complete Claim File and further advised Anthem that, notwithstanding its own reprocessing and approval of both of Mr. Danahy's Remicade claims under its April 1, 2025 prior authorization, Anthem had failed to pay either claim, leaving Mr. Danahy exposed to collection on charges Anthem itself had approved.

58. On August 31, 2026, Anthem again responded by advising Mr. Danahy that it had received "a request . . . for an appeal." As with its prior responses, Anthem's August 31, 2026 letter

ignored Mr. Danahy's request for documents, disregarded counsel's instruction that communications be directed to counsel, and again incorrectly characterized the request as an administrative appeal.

59. Defendants did not produce the requested Claim File or otherwise substantively respond to any of these requests.

60. Despite repeated written requests, repeated authorizations, repeated clarification that Mr. Danahy sought documents rather than an appeal, and repeated opportunities to comply with ERISA, Defendants have failed and refused to disclose Mr. Danahy's Claim File.

61. By repeatedly treating Mr. Danahy's requests for documents as administrative appeals, Defendants inverted the administrative review process required by ERISA. Rather than first providing Mr. Danahy with the information necessary to evaluate and challenge the denial of benefits, Defendants repeatedly purported to process appeals before Mr. Danahy had ever received the information ERISA guarantees a claimant during the administrative review process.

**Prejudice to Plaintiff**

62. Mr. Danahy's prejudice did not begin when Defendants failed to produce the Claim File. It began when Defendants denied coverage for his medically necessary treatment without providing the procedural protections guaranteed by ERISA. Mr. Danahy never received an ERISA-compliant denial letter, never received notice of his appeal rights, never received notice of his right to request the documents relevant to his claim, and never received the documents necessary to evaluate or challenge Defendants' decision. Instead, when Mr. Danahy attempted to obtain those materials, Defendants repeatedly treated his document requests as administrative appeals, effectively preventing him from meaningfully participating in the administrative review process.

63. By withholding Mr. Danahy's Claim File and repeatedly mischaracterizing his requests for documents as administrative appeals, Defendants deprived Mr. Danahy of the meaningful administrative review guaranteed by ERISA. Rather than providing him with the information necessary to evaluate and challenge the denial of benefits, Defendants repeatedly frustrated his efforts to exercise the procedural rights afforded to him under federal law.

64. Without the complete Claim File, Mr. Danahy cannot meaningfully determine the basis for Defendants' denial of coverage, identify the evidence Defendants considered, evaluate whether Defendants complied with ERISA's procedural requirements, assess the qualifications and opinions of any reviewing clinicians, identify the applicable medical or coverage guidelines, or prepare an informed administrative appeal.

65. Defendants' refusal to disclose the Claim File also prevents Mr. Danahy from obtaining responsive medical opinions, submitting additional clinical evidence, identifying procedural violations, evaluating whether Defendants complied with the terms of the Plan, and ensuring that the administrative record accurately reflects all evidence relevant to his claim.

66. Defendants' conduct has therefore deprived Mr. Danahy of the full and fair review guaranteed by ERISA. Rather than allowing him to pursue meaningful administrative review before resorting to litigation, Defendants have forced Mr. Danahy to commence this action simply to obtain documents that ERISA required Defendants to disclose.

67. Each additional day that Defendants continue to withhold Mr. Danahy's Claim File increases the risk that relevant medical evidence, witness recollections, and other information necessary to support his claim will become more difficult to obtain. The prejudice to Mr. Danahy therefore continues to grow with each day of Defendants' noncompliance.

68. In addition to impairing Mr. Danahy's ability to appeal the denial of his claim, the denial of medically necessary treatment and delays in payment for approved claims have adversely affected his health.

69. Following the delay in his receipt of Remicade, Mr. Danahy's dosing frequency increased from once every eight weeks to once every six weeks, resulting in worsening side effects.

70. Mr. Danahy's PET scan records documented severe active inflammation corresponding to the period during which he was unable to access treatment. They also showed inflammation in his lungs for the first time.

71. Mr. Danahy also experienced a decline in breathing capacity, objectively confirmed by pulmonary function testing.

**ERISA's Disclosure Requirements**

72. Administrators have an obligation to provide information to Plan participants and beneficiaries. This obligation includes a duty to respond to written requests for information about employee benefits and the documents relevant to a claim for benefits. Plan participants and beneficiaries have a cause of action if administrators fail to provide the requested information.

73. Specifically, 29 U.S.C. § 1132(c) provides for penalties for an administrator's refusal to supply required information:

> (1) Any administrator….[who fails to provide certain information]
>
> (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes

> of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

74. The penalty is due to be paid by any administrator who fails or refuses to comply with a request for information "which such administrator is required by this subchapter to furnish to a participant or beneficiary."

75. This penalty applies to the failure to provide the documents relevant to the Plan: "(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence. 29 U.S.C. § 1024(b)(4).

76. In addition to the summary plan descriptions and other documents under which the plan is operated, 29 U.S.C. § 1029 provides that the Secretary of Labor may also prescribe what other documents should be furnished:

> (c) Format and content of summary plan description, annual report, etc., required to be furnished to plan participants and beneficiaries. The Secretary may prescribe the format and content of the summary plan description, the summary of the annual report described in section 1024(b)(3) of this title and ***any other report, statements or documents*** (other than the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated), ***which are required to be furnished or made available to plan participants and beneficiaries receiving benefits under the plan.***
>
> (Emphasis added).

77. Pursuant to § 109(c) and 502(c) together, the Secretary is given authority to establish the format and content of what documents are required to be produced "by this subchapter."

Therefore, "Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to . . .may in the court's discretion be personally liable" for a § 502(c) penalty.

78. Also, the Secretary has general authority under "this subchapter" to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this title. 29 U.S.C. § 1135.

79. The Secretary of Labor's ERISA claim procedures regulations, set out in 29 C.F.R. § 2560.503-1(h)(2)(iii) describe the documents an administrator must disclose upon written request.

80. The regulations state that, to provide a full and fair review, a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

81. Whether a document, record, or other information is relevant to a claim for benefits is determined by reference to 29 C.F.R. § 2560.503-1(m)(8).

82. The Secretary explained at 29 C.F.R. § 2560.503-1(m)(8) that the following documents are relevant to the claim, and are thus required to be produced under ERISA:

> (8) A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>
> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard

to whether such advice or statement was relied upon in making the benefit determination.

83. Defendants had an obligation to provide all the documents relevant to a claim that are required to be provided by the Department of Labor's ERISA claims regulations.

84. Defendants, as the claims administrators and Plan, were in possession of all the documents requested by Mr. Danahy. Moreover, Defendants were the only entities with any obligation to provide the documents who were also in possession of the documents requested.

85. Stellar's statements confirm that Leading Edge and Anthem hold the documents relevant to Mr. Danahy's claims. Stellar states that neither it nor 160 Main Street had any ability to determine or affect coverage for Mr. Danahy's treatments, and that Leading Edge, in combination with Anthem, made the coverage determinations on those treatments.

86. To date, Defendants have failed to respond to Mr. Danahy's request for his Claim File.

87. Defendants' failure to respond to Mr. Danahy's requests has prevented Mr. Danahy from properly determining and enforcing his rights under the Plan and under ERISA.

88. ERISA requires Defendants to provide claimants with the opportunity to appeal a denial of benefits, separate from any provider appeal that may be allowed.

89. Defendants failed to provide Mr. Danahy with the opportunity to appeal their adverse benefit determination.

90. Because Defendants never issued an ERISA-compliant adverse benefit determination, never advised Mr. Danahy of his appeal rights, and never produced his Claim File, Defendants made meaningful administrative review, and any exhaustion of administrative remedies, impossible. Defendants' failure to provide Mr. Danahy with the opportunity to appeal the adverse benefit determination constitutes a violation of ERISA's regulatory requirements, a failure to provide him with the full and fair review of his claim guaranteed by ERISA, and requires, at a minimum, a remand to Anthem to permit Mr. Danahy to undergo the appeals process to which

he is entitled upon receipt of the complete Claim File.

91. ERISA's disclosure requirements are not technicalities. They exist because Congress recognized that claimants cannot meaningfully appeal an adverse benefit determination unless they understand why benefits were denied and have access to the materials the administrator considered. By denying Mr. Danahy's claim without providing the disclosures required by ERISA and then repeatedly treating his requests for those disclosures as administrative appeals, Defendants deprived Mr. Danahy of the very administrative review process ERISA was enacted to protect.

**FIRST CAUSE OF ACTION**
**(Statutory Penalties for Failure to Disclose Required Documents, 29 U.S.C. § 1132(c))**
**(ALL DEFENDANTS)**

92. Plaintiff realleges each of the paragraphs above as if fully set forth herein.

93. Under ERISA 29 U.S. Code § 1132(a), "a civil action may be brought (1) by a participant or beneficiary (A) for relief provided for in subsection (c) of this section."

94. Mr. Danahy, as a Plan beneficiary, through his wife, a Plan participant, has the right to enforce this obligation and seek redress of an administrator's violation.

95. Subsection (c) of 29 U.S.C. § 1132 notes that any administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary…may, in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

96. Anthem and Leading Edge were responsible for administering claims under the Plan and making decisions regarding Plan participants' eligibility for benefits.

97. Stellar Health self-funds the benefits payable under the Plan.

98. Defendants are fiduciaries under the Plan and responsible for ensuring compliance with

ERISA.

99. ERISA, 29 U.S.C. § 1132(c), the terms of the Plan, and Defendants' own interpretation of ERISA's requirements and the Plan terms as articulated in their adverse determination letters require Anthem to disclose Mr. Danahy's Claim File to him within 30 days of a written request for information.

100. As of the filing of this Complaint on November 4, 2026, 420 days have passed since Mr. Danahy first requested a copy of his Claim File on September 10, 2025, and 390 days have passed since Defendants were required to disclose it.

101. At $110 per day, Defendants are subject to a statutory penalty of at least $42,900 as of the date of this Complaint, plus any additional amounts that continue to accrue each day until the complete Claim File is disclosed to Mr. Danahy, for their failure to disclose the Claim File in response to his written request.

102. Defendants' actions in failing to provide Mr. Danahy with a copy of the documents relevant to Defendants' adverse benefit decision and the Plan documents constitutes a violation of ERISA.

103. Mr. Danahy has been harmed by Defendants' failure to provide such documents. His ability to pursue his appeal of Defendants' adverse benefit decision has been negatively impacted by Defendants' failure to disclose a copy of Mr. Danahy's Claim File.

104. Defendants' disregard for ERISA's requirement that they disclose a copy of Mr. Danahy's Claim File in response to a denial of health insurance benefits strongly supports the imposition of the maximum statutory penalty for the withholding of documents under ERISA.

**SECOND CAUSE OF ACTION**
**(Breach of Fiduciary Duty, 29 U.S.C. § 1132(a)(3))**
**(ALL DEFENDANTS)**

105. Plaintiff realleges each of the paragraphs above as if fully set forth herein.

106. At all times relevant to this action, the Administrators exercised discretionary authority over the administration of claims and benefit determinations under the Plan and therefore acted as ERISA fiduciaries with respect to Mr. Danahy's claim within the meaning of 29 U.S.C. § 1002(21)(A).

107. Stellar has stated that "Leading Edge, in combination with Anthem, determined" whether Mr. Danahy's treatments would be covered, and that neither Stellar nor 160 Main Street had "any ability to determine or affect coverage." By Stellar's own account, therefore, Leading Edge and Anthem held and exercised discretionary authority over eligibility and benefit determinations under the Plan, including by determining that the April 26, 2025 and June 20, 2025 treatments would be covered after initially denying them, and are fiduciaries with respect to Mr. Danahy's claims. 29 U.S.C. § 1002(21)(A).

108. In the alternative, to the extent Stellar or the Plan retained fiduciary authority over the Plan's claims procedures, Stellar was aware by late August 2025 that Leading Edge and Anthem had determined that Mr. Danahy's treatments were not covered going forward, and, upon information and belief, failed to monitor Leading Edge and Anthem or to take any step to ensure that Mr. Danahy received an ERISA-compliant adverse benefit determination, access to his Claim File, or an administrative appeal.

109. As ERISA fiduciaries, Defendants owed Mr. Danahy duties of loyalty, prudence, candor, and faithful administration of the Plan. Those duties required Defendants to administer claims solely in the interests of Plan participants and beneficiaries, comply with ERISA's claims procedure regulations, provide the disclosures required by ERISA, and afford Mr. Danahy the full and fair review guaranteed by federal law.

110. Defendants breached those fiduciary duties by, among other things:

(a) failing to provide Mr. Danahy with the documents required by ERISA;

(b) repeatedly mischaracterizing Mr. Danahy's requests for documents as administrative appeals;

(c) failing to establish and maintain reasonable claims procedures;

(d) failing to provide Mr. Danahy with an ERISA-compliant adverse benefit determination;

(e) depriving Mr. Danahy of the opportunity to pursue a meaningful administrative appeal; and

(f) placing Defendants' own financial interests ahead of the interests of Mr. Danahy and other Plan beneficiaries.

111. As a direct, proximate, and foreseeable result of Defendants' fiduciary breaches, Mr. Danahy has been deprived of the procedural protections guaranteed by ERISA and has been forced to commence this action to obtain documents that should have been produced during the administrative claims process.

112. Mr. Danahy therefore seeks appropriate equitable relief under 29 U.S.C. § 1132(a)(3), including an order requiring Defendants to comply with ERISA's disclosure obligations, disclose the complete Claim File, restore Mr. Danahy's administrative appeal rights, and provide such additional equitable relief as the Court deems appropriate to remedy Defendants' fiduciary breaches.

113. The equitable relief sought in this Count is distinct from, and not duplicative of, Mr. Danahy's request for statutory penalties. Mr. Danahy seeks prospective equitable relief restoring the procedural protections guaranteed by ERISA in addition to the statutory remedies available under 29 U.S.C. § 1132(c).

**THIRD CAUSE OF ACTION**
**(Declaratory and Equitable Relief Against Anthem and Stellar,**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

114. Mr. Danahy realleges and incorporates by reference the allegations in the preceding paragraphs.

115. Anthem and Stellar are fiduciaries of the Plan with respect to Mr. Danahy's claims. Anthem exercised discretionary authority over the Plan's benefit determinations and claims administration. Stellar self-funds the Plan and, upon information and belief, exercised authority and control over the Plan's management and the payment of Plan benefits. Stellar has also communicated with Mr. Danahy and on his behalf about the status and payment of his claims. 29 U.S.C. § 1002(21)(A).

116. Each of Anthem and Stellar has a fiduciary duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to discharge its duties with respect to the Plan solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits to them. That duty requires each defendant to refrain from acting in an arbitrary and capricious manner and from conducting the affairs of the Plan for any reason other than the exclusive benefit of participants and beneficiaries.

117. One of the many fiduciary duties owed to ERISA plan participants and beneficiaries is a duty to "convey complete and correct material information to a beneficiary," including a "duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know . . . ." Krohn v. Huron Mem. Hosp., 173 F.3d 542, 548 (6th Cir. 1999).

118. A fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally. Varity Corp. v. Howe, 516 U.S. 489, 506 (1996).

119. Anthem approved Mr. Danahy's Remicade treatment in advance on April 1, 2025 (Reference No. 133501583) and, after reprocessing, approved the April 26, 2025 and June 20, 2025 claims as consistent with that authorization. Anthem determined that Mr. Danahy was entitled to those benefits. The benefits were approved but have never been paid.

120. Mr. Danahy fulfilled his obligations under the Plan. He was eligible and enrolled, he obtained prior authorization, he received the authorized treatment from the authorized provider, and he met each condition stated in Anthem's April 1, 2025 authorization letter. Anthem and Stellar knew that Mr. Danahy had done what the Plan required. Mr. Danahy made no material misrepresentation to Anthem, Stellar, or the Plan.

121. Stellar nonetheless represented that Mr. Danahy's claims were covered and paid. Stellar states that Anthem "ultimately covered the cost of these two treatments" and that revised Explanations of Benefits indicated the Remicade "would be covered." Those statements were not accurate. Anthem has not paid Beth Israel Deaconess Medical Center on either claim, and Mr. Danahy remains responsible to the provider for the charges. Stellar's statements were material because they concerned whether Mr. Danahy owed the charges at all.

122. Mr. Danahy has been harmed by these misrepresentations and by the failure to pay claims that Anthem approved. He continues to be billed, and the outstanding bills for the approved claims have been sent to collections.

123. Anthem and Stellar violated ERISA and the terms of the Plan by failing to pay the claims Anthem approved, by making and allowing false statements about the payment of those claims, and by failing to correct those statements.

124. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

125. Mr. Danahy seeks a declaration that Anthem and Stellar breached their fiduciary duties and violated ERISA and the Plan; an injunction requiring payment of the approved claims and prohibiting collection of the charges from Mr. Danahy; and other appropriate equitable relief,

including surcharge, make-whole relief, and equitable estoppel. See CIGNA Corp. v. Amara, 563 U.S. 421, 440–42 (2011).

126. Anthem and Stellar are responsible to Mr. Danahy for all of the losses he suffered as a result of their breaches.

**FOURTH CAUSE OF ACTION**
**(Attorneys' Fees and Costs Under 29 U.S.C. § 1132(g)(1))**
**(ALL DEFENDANTS)**

127. Plaintiff realleges each of the paragraphs above as if fully set forth herein.

128. Pursuant to 29 U.S.C. § 1132(g)(1), Mr. Danahy is entitled to recover his reasonable attorneys' fees and costs incurred in prosecuting this action.

129. Defendants possess the financial ability to satisfy an award of attorneys' fees and costs.

130. Mr. Danahy's prosecution of this action benefits not only himself but also other participants and beneficiaries covered under the Plan, and ERISA plan participants generally, by requiring Defendants to comply with ERISA's disclosure requirements and claims procedure regulations.

131. Defendants acted in bad faith by repeatedly refusing to disclose documents required by ERISA, repeatedly mischaracterizing Mr. Danahy's document requests as administrative appeals, failing to provide Mr. Danahy with an ERISA-compliant adverse benefit determination, and forcing Mr. Danahy to commence this litigation simply to obtain documents that ERISA required Defendants to disclose.

132. An award of attorneys' fees and costs will encourage compliance with ERISA's disclosure obligations, deter similar misconduct in the future, and further the remedial purposes of ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

a) Declare that Defendants violated ERISA by failing to disclose Mr. Danahy's Claim File and the other documents required by ERISA.

b) Declare that Defendants failed to provide Mr. Danahy with the full and fair review required by ERISA, including by denying his claim without issuing an ERISA-compliant adverse benefit determination and by repeatedly treating his requests for required disclosures as administrative appeals.

c) Declare that Defendants failed to establish and follow reasonable claims procedures as required by ERISA.

d) Order Defendants immediately to produce Mr. Danahy's complete Claim File, including all documents, records, policies, guidelines, internal notes, communications, utilization review materials, medical reviews, criteria, and other information relevant to his claim for benefits.

e) Award Mr. Danahy statutory penalties pursuant to 29 U.S.C. § 1132(c)(1) for each day Defendants have failed to comply with his written requests for documents.

f) Order Defendants to restore Mr. Danahy's administrative appeal rights and permit him to pursue a full administrative appeal after production of the complete Claim File.

g) Order Defendants to consider any additional medical evidence, expert opinions, legal arguments, or other information Mr. Danahy submits following production of the Claim File.

h) Award Mr. Danahy appropriate equitable relief under 29 U.S.C. § 1132(a)(3) sufficient to remedy Defendants' fiduciary breaches and restore the procedural protections guaranteed by ERISA.

i) Declare that Anthem and Stellar are fiduciaries of the Plan and breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) by failing to pay the claims Anthem approved and by misrepresenting that Mr. Danahy's claims were paid.

j) Enjoin Defendants under 29 U.S.C. § 1132(a)(3)(A) to pay Mr. Danahy's approved claims to Beth Israel Deaconess Medical Center and from taking or permitting any collection action against Mr. Danahy on those claims and order the withdrawal of any collection already commenced.

k) Award Mr. Danahy surcharge, make-whole relief, and other appropriate equitable relief under 29 U.S.C. § 1132(a)(3)(B), including equitable estoppel, sufficient to compensate him for all losses caused by Anthem's and Stellar's breaches.

l) Award Mr. Danahy his reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

m) Award prejudgment interest to the extent permitted by law.

n) Grant such other and further relief as this Court deems just and proper.

Dated: November 4, 2026

Respectfully submitted for the Plaintiff,

/s/ Mala M. Rafik
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E: mmr@rosenfeld.com

/s/ Patrick L. Glenn
Patrick L. Glenn

BBO No. 641795
ROSENFELD & RAFIK
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E: plg@rosenfeld.com